Mr. Justice MacArthur
delivered the opinion of the court, in substance as follows:
In considering this cause, perhaps it will be as well to determine a point of practice in advance relating to bills of review, and that is as to what portion of the record we are at liberty to inspect for the purpose of discovering error in the decree sought to be modified or set aside by a bill of this nature. This practice has been regulated by the cele-' brated ordinance of Lord Bacon, according to which no bill of review can be entertained unless it shows error in law appearing in the body of the decree, without any other examination of fact'or proceeding in the cause. This rule was adhered to with reference to the form of a decree at that time. An enrolled decree in the English chancery consisted of a parchment upon which all the pleadings were engrossed, and the exceptions and orders made thereon, together with a statement of the facts which the chancellor found to be established by the proof; and then followed the judgment of the court. The question of error in law could be determined upon the face of the decree without any further examination. With ns the decree is usually confined to the judgment of the court; and, indeed, the rules of the Supreme Court of the United States forbid a recital of the pleadings or other proceedings in the cause in a final decree. If the rule of Lord Bacon, before cited, is to be applied to decrees thus general in form, it will be utterly impossible to sus *289 tain a bill of review for errors in point of law. This difficulty was early provided for by the Supreme Court itself. In Whiting v. The Bank of U. S., 13 Pet., 6, the court say: “It has been suggested at the bar that no bill of review lies for errors of law, except where such errors are apparent on the face of the decree of the court. That is true in the sense in which the language is used in the English practice. In England, the decree always recites the substance of the bill and answer and pleading, and also the facts on which the court founds its decree; but in America the decree does not ordinarily recite either the bill or answer or pleadings, and generally not the facts on which the decree is founded. But with us the answer and other pleadings, together with the decree, constitute what is properly considered as the record; and therefore, in truth, the rule in each country is precisely the same in legal effect, although expressed in different language, namely, that the bill of review must be founded on some error apparent upon the bill, answer and other pleading, and decree; and that you are not at liberty to go into the evidence at large to establish an objection to the decree founded on the supposed mistake of the court in its own deductions from the evidence.” The rule as thus explained is fully recognized in Dexter v. Arnold, 5 Mason, 311; Putnam v. Day, 22 Wall., 60; and Buffington v. Harvey, 5 Otto, 99. We may, therefore, consider it now settled that the pleadings, the proceedings, and the decree constitute a portion of the record for the purpose of examining all errors of law in a bill of review.
In pursuance of this rule we can look into the proceedings to see if there is any mistake in the decree. We find that there was a demurrer to the bill' in the original suit, which was overruled at the special term, and the defendant had leave to answer the bill therein within ten days. Erom this order an appeal was taken to the general term, which appeal was dismissed for the reason that an appeal did not lie from an order overruling a demurrer to a bill and giving leave to *290 answer. Much difficulty had been experienced by the court as to whether an order of this kind was appealable, and it was not until that term that it was expressly decided that an appeal would lie from such an order. In several instances of such appeals no question had been raised, and undoubtedly the decision of the court was unexpected by the counsel. However this may be, it cannot be doubted that as there was an appeal bond approved by one of the justices of the court, it operated as a stay of proceedings at the special term during the appeal. It appears from the proceedings that the decree of the 22d September, 1876, pro confesso, as well as the final decree on (he 3d of November following, were both entered in the cause at the special term while the appeal was pending; for it was not until the 18th of December,-1876, that the latter was dismissed and the cause remanded for further proceedings.
In this we think there was manifest error. The proper practice on the part of tbe complainant in the original suit to pursue, under such circumstances, was to move for a dismissal of the appeal, and thus get rid of the impediment to his proceeding in the court below. The mere fact that the order turned out to be one from which no appeal in the opinion of the court would lie, did not authorize the complainant to disregard the supersedeas and take any order in the cause concluding the interests of the parties. For these reasons we think there was error on the face of the record.
But, passing over this objection, the inquiry occurs whether the complainant in the original suit was entitled to the final decree passed in the cause, without any proof, except such as might be inferred from the pro confesso which he had previously obtained. Speiden alleged in his bill that he purchased from Davis on two occasions 3.65 bonds of the District of Columbia, making an aggregate of $50,000; that he made a small payment in cash and gave his notes for the balance, the bonds to be held by Davis as collateral security for the payment of the notes. Several renewals took place subsequently, interest was paid, and as the bonds depreciated mar *291 gins were provided for; and finally the amount was merged in two notes, one for $30,000 and the other for $2,500, the bonds all the time remaining as collateral security.
He also alleges that in consequence of an act of Congress making provision for the payment of the semi-annual interest of the bonds, the value appreciated to 741,- and 75 per cent, and that Havis sold the bonds for 66 per cent, at that time. He states various requests for a settlement without success, and expresses his belief that Havis never had the bonds, and was practicing a fraud upon him. He requests the notes to be surrendered, and an action at law commenced by Havis for a balance due him on one of the notes to be enjoined. The decree in his favor was for all the money he had paid Havis for interest and margins, and which he had specifically set up in the bill. Now, whether he was entitled to this amount depended upon whether Havis had sold the bonds, and when, and .for how much. If Havis had sold the bonds for 66 per cent., as alleged in the bill, the proceeds would be insufficient to satisfy the notes, and hence no doubt Havis had commenced the action at law to recover the balance. We think, although there was a decree pro confesso, the averments of the bill were not of that precise and definite character as to dispense with some proof, or taking an account for the purpose of ascertaining more clearly the interests of the parties. We therefore come to the conclusion that in this respect there is also error in the decree.
But another rule of Lord Bacon, that has prevailed ever since, is, that a party must perform the decree before the bill of review can be filed. This rule has some exceptions, or, rather, the court will dispense with a strict compliance of the decree under special circumstances; such as the release of a mortgage, the surrender of a lease, or of a homestead, or place of business, where the party would be left in destitution, or where otherwise it is impossible for the party to perform it. But there is no discretion left in the court where the decree is for the payment of money, as in this case, unless the complainant sets up his utter inability arising from insolv *292 eney. No excuse of this kind is stated in the bill, and we would be disposed to sustain the demurrer, and dismiss the bill without prejudice to filing another, after the complainant had complied with the decree. But time for' filing a bill of this kind has expired, and that course would deprive him of the benefit of the error in the decree. To obviate this result, and at the same time give the defendant the benefit of the rule, we will now give the complainant an opportunity to bring the amount into court nunc pro tunc. This will be a substantial compliance with the rule, without subjecting the complainant to the loss of his equitable remedies.
The decision of the court is that the decree appealed from overruling the demurrer to the bill of review will be affirmed, upon condition that complainant brings into court the amount of the decree in the original suit; otherwise the decree herein to be reversed and the bill dismissed.