## ALLEN *v.* WILSON and others.

*(Circuit Court, E. D. Michigan.    April 7, 1884.)*

**EQUITY JURISDICTION OF CIRCUIT COURT—JUDGMENT AT LAW.**

The circuit courts of the United States have no power to set aside, reverse, or modify a judgment at law or decree in chancery after the term at which it was entered, save only in the cases specified in *Bronson* v. *Schulten*, 104 U. S. 410.

In Equity.

This was a demurrer to a petition of defendant Canfield to set aside an execution and levy for a deficiency arising out of the sale of mortgaged premises upon foreclosure, to restrain the plaintiff and the marshal from further proceedings to sell the defendant's lands; and also to open the final decree in the cause, and modify the same, so far as it decreed the payment of the mortgaged debt by the petitioner. The bill, which was filed September 19, 1881, charged that defendant was a subsequent purchaser of the mortgaged premises, and alleged that he had assumed payment of the mortgaged debt. A subpœna was taken out and personally served upon all the defendants, September 21st. The ordinary decree *pro confesso*, for want of an appearance, was entered December 17, 1881, and a final decree for the sale of the property, upon the order *pro confesso* and testimony, was made October 3, 1882. The decree was enrolled November 15th. This decree provided "that upon the coming in and confirmation of said report" (master's report of the sale of the mortgaged premises) "said defendants James Wilson and Lucius H. Canfield, who are personally liable for the debt secured by the said mortgage, pay to complainant the amount of such deficiency, with interest thereon as aforesaid from the date of such report, and the complainant have execution therefor." The mortgaged premises were regularly sold under this decree by the master on the twenty-sixth day of January, 1883, report of sale filed, and, in due course, an order of court taken confirming it. By this order of confirmation an execution was again ordered to issue, pursuant to general equity rule 92, as it had before been ordered by the final decree. This order was made in November, 1883. The petition filed by defendant Canfield stated that he was not a party to the mortgage and notes sought to be foreclosed, and that his only connection with the mortgaged premises was this: That the defendant Wilson came to him and stated that he owed the mortgage to one Hathaway, who then held it; that he had not been able to agree with him upon the amount due; that the amount actually due was about $2,000, and he thereupon requested petitioner to let him have the money to pay Hathaway, and that petitioner should see Hathaway and endeavor to agree upon the amount due, and pay him, if they could agree; that petitioner found, on seeing Hathaway, that the amount due was largely in excess of $2,000,

and immediately notified Wilson that he could not let him have the money, and that he would have nothing further to do with the matter, and that he never did; that the quitclaim deed made no mention of the mortgage; that petitioner never had anything to do with the premises, and never recorded the deed. The petition denied fully any admission made by petitioner of any liability to pay the mortgage debt. The petitioner further stated, as an excuse for failing to enter his appearance, that plaintiff's solicitor knew before the bill was filed that petitioner had had this quitclaim deed, and hence, when the subpœna was served upon him, knowing there was no basis in fact for a personal decree, he had a right to suppose, and did suppose, that he was made a party to cut off any right or claim to the land under the deed. To this petition plaintiff demurred.

*L. D. Norris,* for plaintiff.

*F. H. Canfield,* for petitioner.

BROWN, J. Conceding that the order for an execution for the deficiency, entered in November last, should not have been granted without notice, and that, under general equity rule 88, the petitioner is entitled to a rehearing of such order at this term, it is manifest that it will not avail him to vacate the order unless the decree for the sale of the mortgaged premises be also opened and modified, since this decree provided that petitioner, who was adjudged to be personally liable for the debt, pay the amount of such deficiency after the sale of the premises, and that plaintiff have execution therefor. It is conceded that it is within the power of this court to make this provision in the decree. Equity rule 92.

We are thus confronted again with the question, frequently raised and uniformly decided, whether this court has the power to open a decree by default after the expiration of the term. In this case, three terms expired before the application was made. It would seem that if any principle of law could be settled by adjudications of the supreme court, this one ought to be considered at rest; and yet the occasional hardship of the rule is such that the repeated attempts of counsel to induce the court to let in an unfortunate defendant can scarcely be deemed a matter of surprise. Yet in nearly all these cases there is an element of negligence on the part of the delinquent party, which, under a correct and logical system of practice, ought to estop him from complaining of the harshness of the rule. For example: In the case under consideration the default of the defendant was not entered for three months after the service of the subpœna, during which time he might have entered an appearance. A final decree was not entered until more than a year after such service. He chose, however, to rely upon his supposition that he was made a party only to cut off any right or claim to the premises under his deed, and neglected the most obvious precaution of ascertaining what claim was made against him.

To show how completely we are foreclosed from affording defend-

ant the desired relief, we refer to the following adjudications of the supreme court upon this subject: The question was first decided in *Hudson* v. *Guestier*, 7 Cranch, 1, in which the court declined to rehear a cause after the term in which it was decided. In *Cameron* v. *McRoberts*, 3 Wheat. 591, it was held that the circuit court had not power over a decree in equity, so as to set the same aside on motion, after the expiration of the term in which it was rendered. In *Ex parte Sibbald* v. *U. S.* 12 Pet. 488, decided in 1838, application was made to open a decree of the supreme court entered at a previous term, and the court held that "no principle was better settled, or of more universal application, than that no court can reverse or annul its own final decrees or judgments, for errors of fact or law, after the term in which they have been rendered, unless for clerical mistakes, or to reinstate a cause dismissed by mistake; from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing." Neither of these, however, were decrees by default. In 1843 the general equity rules now in force were adopted by the supreme court, the nineteenth of which, as amended, provides that "when the bill is taken *pro confesso* the court may proceed to a decree at any time after the expiration of 30 days from and after the entry of the order to take the bill *pro confesso;* and such decree rendered shall be deemed absolute unless the court shall at the same term set aside the same, or enlarge the time for filing the answer, upon cause shown, upon motion and affidavit of defendant." It is difficult to see how language could be more explicit. In *Bank of U. S.* v. *Moss*, 6 How. 31, the the circuit court for the southern district of Mississippi had set aside a judgment rendered at a preceding term and dismissed the case for what it considered to be want of jurisdiction. The supreme court reversed this order, saying that "even where the record of a circuit court did not contain any averments giving jurisdiction, this court has held that, at a subsequent term, after final judgment, the same tribunal which rendered it could not set it aside upon motion. And we have repeatedly decided, as to judgments of this court, that they could not be changed at a subsequent term, in matters of law, whether attempted on motion or a new writ of error, or appeal, on the mandate to the court below."

The case of *McMicken* v. *Perin*, 18 How. 507, was much like the one under consideration. In this case a decree *pro confesso* had been entered in the circuit court, and at the same term a final decree was rendered. At a subsequent term the appellant filed a petition in the circuit court, alleging that he had been deceived by the appellee in reference to the prosecution of the bill, and had consequently failed to make any appearance or answer, and that he had a meritorious defense, and prayed the court to set aside the decree and allow him to file an answer to the bill. This petition was dismissed, and the decree of the circuit court was affirmed. Appellant thereupon filed

a bill of review, praying relief from this decree, which he alleged to have been obtained by means of fraud and imposition, setting forth the same facts as before. This bill was dismissed, and such dismissal was affirmed by the supreme court. 22 How. 285. Indeed, that court has since repeatedly decided that a bill of review will not lie, except for errors apparent upon the record, or for some new matter of fact which was not known and could not possibly have been used at the time of the decree. *Whiting* v. *Bank of U. S.* 13 Pet. 6; *Kennedy* v. *Georgia State Bank,* 8 How. 609; *Putnam* v. *Day,* 22 Wall. 60; *Buffington* v. *Harvey,* 95 U. S. 99; *Beard* v. *Burts,* 95 U. S. 434. The last case upon the subject of setting aside judgments upon motion is that of *Bronson* v. *Schulten,* 104 U. S. 410, in which most of the previous cases were considered, and it was again held that there was no power to set aside, vacate, or modify a judgment after the lapse of the term. The exceptions to the general rule are here stated. See, also, *Brooks* v. *Railroad Co.* 102 U. S. 107. The decisions of the circuit courts are, we believe, without exception, to the same effect. *U. S.* v. *Brig Glamorgan,* 2 Curt. 236; *Scott* v. *Blaine,* Bald. 287; *Bank* v. *Labitut,* 1 Woods, 11; *U. S.* v. *Millinger,* 7 Fed. Rep. 187; *Newman* v. *Newton,* 14 Fed. Rep. 634; *School-dist.* v. *Lovejoy,* 16 Fed. Rep. 323.

In admiralty causes it is provided, by general rule 40, that "the court may, in its discretion, upon the motion of the defendant and the payment of costs, rescind a decree in any suit in which, on account of his contumacy and default, the matter of the libel shall have been decreed against him, and grant a rehearing thereof at any time within ten days after the decree has been entered." In the early case of *The Illinois,* 1 Brown, Adm. 13, decided by Judge Wilkins, of this district, where a decree had been entered up in the absence of respondent's proctor, who was engaged in trying a case in one of the country circuits, the court held that it had no power to set aside the decree after the lapse of the 10 days prescribed by rule 40. This ruling was also adopted by my learned predecessor in the case of *Northrop* v. *Gregory,* 2 Abb. U. S. 503, and by Judge Welker, of the Northern district of Ohio, in *The Oriental,* 9 Chi. Leg. N. 134. In England and in several of the United States, including New York, New Jersey, Maryland, and Michigan, the law is well settled, that where, through accident, misapprehension, surprise, or mistake, a party has been prevented from making his defense, the court will allow him to come in after the term. The supreme court has, however, shown no disposition to relax its rule in this particular, and we, therefore, feel compelled to sustain this demurrer and dismiss the petition.