## FRANKLIN v. MASONITE CORPO-RATION.

### No. 110.

Circuit Court of Appeals, Second Circuit.

Dec. 31, 1942.

Before L. HAND, SWAN and CHASE, Circuit Judges.

Daniel L. Morris and Blair, Curtis & Hayward, all of New York City, for plaintiff-appellant.

George I. Haight, of Chicago, Ill., and W. R. Liberman, of New York City (Herbert H. Dyke, of Laurel, Miss., of counsel), for defendant-appellee.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment holding infringed, but invalid, the single claim of Patent No. 1,826,499, issued on October 6, 1931, to Wayne W. Blackburn. The invention is described as having as its "primary object" to provide a device "whereby the joints between laths * * * may be reinforced" so as to prevent cracks in the plaster. Secondary objects are: (1) To provide "reinforcing elements" which can be easily "handled and bundled"; (2) to hinge these "elements adjacent to the lath joints" so that they can be swung over the joints; and (3) to make the "unit" simple and cheap. The disclosure is short; it describes "an elongated metallic frame 4 to which is secured wire mesh 5 that the plaster may adhere to. * * * The frame 4 is secured to the laths along one side by staples 6 * * * which are preferably driven through the laths and clinched or bent to hinge the frame." The figures disclose only a series of parallel laths across the ends of which a rectangular—"elongated"—frame is fastened, making them into a single member; but we shall assume arguendo that the invention is equally well embodied in a single lath, near one edge of which the "frame" is so hinged that, when swung over it will span the joint between the laths. The claim reads as follows: "A lathing unit comprising an elongated frame having one side hinged to the laths of a wall construction and at one side of the opposing ends of the laths that said frame may be swung to overlie said ends of the laths, foraminous material closing the frame, and headed fasteners extending through the material and driven into certain of the laths to retain the frame in said last named position."

The defendant's supposed infringement consists of nothing more than a single broad lath, near one edge of which is hinged a wire mesh having "undulated edges"—meaning that its lateral edges are not made merely by cutting a wire mesh, but by a single sinuous wire. The defendant's laths can be shipped with the meshes turned up against their flat faces; and when one lath is set against another; the mesh can be swung across the joint between the two quite as the patented "frame" can be. But the supposed infringement has no "frame" separate from the mesh, unless the outer "undulating edges" are an equivalent. The judge held that the defendant infringed, but that the claim was invalid. We think that the claim is not infringed; but to the determination of that question some discussion of the prior art is necessary.

Before Blackburn's application was filed the art knew that cracks in the plaster were likely to occur along joints between two laths, and it had been common practice to remedy this by nailing strips of wire mesh across them. These strips were cut to suitable lengths and shipped in bundles, but they were extremely awkward to handle. They got tangled with each other, and cut the hands of workmen who pulled them apart; for this reason they were known in the trade as "wild cats." Such strips had been disclosed in two patents granted to one, Walpers, in June and July, 1923—No. 1,459,170 and No. 1,461,590; and in 1928 Walpers in a third patent—No. 1,684,-899—disclosed as an improvement strips of mesh with "undulating edges," like the defendant's. These, he said, would do away with the "disadvantages in handling and use due to sharp or ragged edges which make the reinforcement somewhat difficult and to a certain extent dangerous to handle in this form, and also due to the fact that such unprotected edges in certain types of fabric are liable to result in certain entanglement" (page 1, lines 28–34). Blackburn filed his application about twenty months after Walpers's third patent appeared; if he had succeeded in getting a claim for merely hinging Walpers's mesh with "undulating edges" upon the lath preparatory to shipment, we could not have avoided saying whether that advance would support a patent. It is true that even if the Patent Office had granted such a claim, we should have had to be satisfied by more convincing evidence than any contained in this record that the trade had found in it an answer to troubles of long standing. As the evidence stands, we can hardly suppose that such an improvement should rank for more than a convenience in packing and handling which it required no exceptional talent to contrive.

However, we need not decide that question, for the Office never allowed such a claim. As will appear upon scrutiny, the claim actually allowed was for "a lathing unit" comprising four elements: (1) The frame; (2) the hinge; (3) the mesh; (4) the nails through the mesh. If one chooses, one may add the laths on each side, though these are more properly part of the setting. When Blackburn filed his application it had six claims which by reference to the four elements just mentioned may be analyzed as follows: Claims one, two and three, elements 3 and 4: Claim four, elements 1, 3 and 4: Claim five, elements 1, 2, 3 and 4: Claim six, elements 2, 3 and 4. The defendant's device may be said to embody Claim six; but that was abandoned like all the rest and Claim five alone retained, for the claim allowed is only Claim five with some functional verbiage which added nothing to the structure. (The phrase: "said frame may be swung to overlie said ends of the laths," is merely a statement of operation.) Had Blackburn cancelled all his original claims but Claim five, he would therefore have been concluded from maintaining that a "frame," distinct from the "mesh," was not a necessary element of the claim. Schriber Co. v. Cleveland Trust Co., 311 U.S. 211, 220, 221, 61 S.Ct. 235, 85 L.Ed. 132. He could not escape that limitation by going through the form of cancelling Claim five and restating it in other words. The defendant does not infringe the claim; and we see no reason for passing on its validity.

Decree affirmed for non-infringement.